IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Grant Street Group, Inc.** | ) |
| | ) Civil Action No. _____ |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) JURY TRIAL DEMANDED |
| | ) |
| **Ipreo Holdings LLC** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff Grant Street Group, Inc. ("Grant Street") complains against Defendant Ipreo Holdings LLC ("Ipreo") and alleges as follows:

1. This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, that arises out of Ipreo's use of an electronic auction system called BidComp/Parity and/or substantially similar systems. The use of BidComp/Parity infringes Grant Street's U.S. Patent No. 7,523,063 ("the '063 patent"), a copy of which is attached as Exhibit A. Ipreo's use, marketing, offers for sale of auctions using, and sale of auctions using BidComp/Parity and/or substantially similar systems are acts of infringement.

2. The '063 patent is related to U.S. Patent No. 6,161,099 ("the '099 patent"), which a jury found to be infringed by Ipreo's subsidiary i-Deal LLC on October 5, 2006.

## THE PARTIES

3. Grant Street is a corporation of the Commonwealth of Pennsylvania having its corporate headquarters and main place of business located at 429 Forbes Avenue, Suite 1800, Pittsburgh, PA 15219.

4. Grant Street is a software technology company.

5. Until 2001, Grant Street Group operated under the name MuniAuction, Inc.

6. Ipreo is a corporation of the state of New York having its corporate headquarters and main place of business located at 1359 Broadway, 2nd Floor, New York, NY 10018, with other U.S. offices in Raleigh, North Carolina, and Washington, D.C.

7. Ipreo is owned by Kohlberg Kravis Roberts & Co L.P. ("KKR"), which acquired Ipreo in 2011.

8. Since no later than December 2006, Ipreo has been the parent company of i-Deal LLC ("i-Deal"), when i-Deal merged with Hemscott Group Ltd. under a common holding company, Ipreo.

9. I-Deal was founded in 2001 by four companies: Merrill Lynch, Microsoft, Salomon Smith Barney, and Thomson Financial.

## THE PATENT

10. Grant Street refers to and incorporates herein each of the preceding paragraphs 1-9 as if fully set forth herein.

11. The '063 patent, entitled "Process and Apparatus for Conducting Auctions Over Electronic Networks," issued on April 21, 2009 to MuniAuction, Inc. as assignee of inventors Myles C. S. Harrington, Daniel J. Veres, and Robert M. Panoff.

12. Grant Street is the current owner of the '063 patent.

13. The provisional application that led to the '063 patent was filed on May 29, 1997.

14. Specifically, the '063 patent claims priority back to provisional application 60/047,876.

15. A certificate of reexamination for the '063 patent issued on June 28, 2011, in which claims 47-50 were cancelled and the remaining were confirmed as being valid.

16. In this reexamination of the '063 patent, the examiner concluded in part that "the prior art does not provide the teachings to sustain a rejection under 35 USC 102 nor 35 USC 103 of a computer system for mediating an auction of at least one financial or legal instrument, said computer system being configured to receive bids from bidders using web browsers, wherein the bidders can be in different physical locations and can simultaneously participate in the auction, said computer system comprising: means for provide [sic] a centralized time indication in combination with means for enforcing at least one condition bidders must satisfy to submit competing bids; means for enforcing at least one condition competing bids must satisfy; means for receiving, over the Internet, bids from bidders using web browsers; means for enabling bidders to modify their bid inputs; means for permitting comparison of received bids; and means for providing information allowing for display of at least the best bid."

17. A second certificate of reexamination for the '063 patent issued on December 26, 2012, in which all of the claims were confirmed as valid.

18. In the second reexamination of the '063 patent, the examiner concluded in part that "the combination of references as set forth in the Final Rejections fails specific [to] point out teachings directed to 'enforcing at least one condition bidders must satisfy to submit competing bids' and a 'centralized time indication' as claimed.'"

19. The '063 patent was at issue in a recent litigation in this Court, *Grant Street Group, Inc. v. RealAuction.com, LLC*, 2:09-cv-01407 ("the RealAuction litigation").

20. On June 17, 2013, the jury in the RealAuction litigation rejected RealAuction.com's invalidity defenses and declined to invalidate any claims of the '063 patent.

21. On July 17, 2013, this Court entered judgment on that jury verdict for Grant Street and against RealAuction.com on RealAuction.com's "counterclaim for a declaration of invalidity of claims 1-42 of the '063 Patent."

22. The '063 patent discloses methods and apparatuses for conducting auctions of financial or legal instruments over electronic networks, in particular online auctions.

23. For example, claim 1 of the '063 patent claims, "A computer-mediated method of conducting an auction of a financial or legal instrument over an electronic network, wherein bidders can be in different physical locations and can simultaneously participate in the auction, said bidders having access to networked devices, said bidders' networked devices communicating over the electronic network with a least one computer having auction software, said method comprising: a) enforcing at least one condition bidders must satisfy to submit competing bids; b) enforcing at least one condition competing bids must satisfy; c) providing a centralized time indication; d) receiving, over the network, bids from bidders using said networked devices; e) enabling bidders to modify their bid inputs; f) permitting comparison of received bids; and g) providing information allowing for display of at least the best bid."

24. Grant Street is also the owner of a related patent, the '099 patent, entitled "Process and Apparatus for Conducting Auctions Over Electronic Networks."

25. The same May 29, 1997 provisional application that led to the '063 patent also led to the '099 patent.

26. The '063 patent is a continuation of application number 09/087,574, which was a continuation of the '099 patent.

## JURISDICTION AND VENUE

27. Grant Street refers to and incorporates herein each of the preceding paragraphs 1-26 as if fully set forth herein.

28. This is an action for damages, permanent injunctive relief and any further relief required based on patent infringement under 35 U.S.C. § 271.

29. Jurisdiction and venue are proper in this district pursuant to 28 U.S.C. §§ 1331, 1338(a), 1391, and 1400.

30. Upon information and belief, Ipreo regularly transacts business within this district in a substantial, continuous, and systematic way, including but not limited to, conducting auctions in Pennsylvania and in this district that use BidComp/Parity, and marketing BidComp/Parity to potential customers and investors in Pennsylvania and in this District.

31. For example, information available on Ipreo's website (last visited February 18, 2014), identifies: i) business and commercial activities Ipreo has conducted in this state, including an "Ipreo Municipal Deal Calendar" that lists a 2011 project related to the "Pennsylvania Turnpike Commission", and; ii) a 2011 issue of the Ipreo "The MuniIC Newsletter" with a profile of a Pennsylvania investor, "Federated Investment Management Company," described as an investor "that may be of interest to municipal issuers," with a place of business identified as "Federated Investors Tower, 1001 Liberty Ctr., Pittsburgh, Pennsylvania 15222-3779."

32. In addition, on May 9, 2002, Ipreo's subsidiary and predecessor, i-Deal, admitted in its answer to an amended complaint in this Court the allegation that it "transacts business in this judicial district by advertising, promoting, offering to sell and selling products and services to customers located in this judicial district and by conducting other business within this judicial district and elsewhere in the United States" and participated in that litigation in this Court through at least 2007.

33. Ipreo is subject to personal jurisdiction in this Court by virtue of all the contacts in the district referenced above.

## NATURE OF THE CASE

34. Grant Street refers to and incorporates herein each of the preceding paragraphs 1-33 as if fully set forth herein.

35. In 1997, Grant Street hosted the world's first online bond auction for the City of Pittsburgh, Pennsylvania and used its technology that embodies the inventions described and claimed in the '063 and '099 patents.

36. Grant Street continues to practice the '063 and '099 patents by administering online auctions of financial instruments, including but not limited to, bonds, bills, notes, CDs, GICs, preferred stock, tax certificates, tax deeds, foreclosures, collateral in custody, interest rate swaps, tax credits, loans, leases, mortgages, mortgage-backed securities, CDOs, CLOs, money market instruments, equity instruments including stock, rights, options, film credits, trade receivables, sovereign debt exchanges, currencies, general securities lending, and warrants.

37. On June 1, 2001, Grant Street (then MuniAuction) sued Thomson Financial in this Court ("the Thomson litigation") for patent infringement of the '099 patent.

38. On March 28, 2002, Grant Street amended its complaint in the Thomson litigation and added i-Deal as a defendant.

39. In the Thomson litigation, Grant Street accused both Thomson and i-Deal of infringing the '099 patent based on their use of a system called BidComp/Parity.

40. On information and belief, Ipreo currently uses the same BidComp/Parity system or essentially the same system that was found by a jury to infringe the asserted claims 1, 2, 9, 14, 18, 20, 24, 31, 32, 36, 40, 42, 46, and 56 of the '099 patent in the Thomson litigation.

41. Ipreo's BidComp/Parity system has the same feature as the i-Deal system found to infringe the '099 patent that the jury found to input data associated with at least one bid for at least one fixed income financial instrument into a bidder's computer via said input device.

42. Ipreo's BidComp/Parity system has the same feature as the i-Deal system found to infringe the '099 patent that the jury found to automatically compute at least one interest cost value based at least in part on inputted data, with automatically computed interest cost value specifying a rate representing borrowing cost associated with at least one fixed income financial instrument.

43. Ipreo's BidComp/Parity system has the same feature as the i-Deal system found to infringe the '099 patent that the jury found to submit a bid by transmitting at least some of the inputted data from the bidder's computer over at least one electronic network.

44. Ipreo's BidComp/Parity system has the same feature as the i-Deal system found to infringe the '099 patent that the jury found to communicate at least one message associated with said submitted bid to an issuer's computer over at least one electronic network and displaying, on the issuer's computer display, information associated with the bid including the computed interest cost value.

45. Ipreo's BidComp/Parity system has the same feature as the i-Deal system found to infringe the '099 patent that the jury found to transmit a centralized time indication to a bidder's computer over an electronic network and displaying the transmitted time indication on the bidder's computer display.

46. On October 5, 2006, following an eight-day jury trial, the jury in the Thomson litigation found that Thomson and i-Deal infringed claims 1, 2, 9, 14, 18, 20, 24, 31, 32, 36, 40,

42, 46, and 56 of the '099 patent, that these claims were not obvious, and that Grant Street was entitled to more than $38 million in damages.

47. Specifically, the jury in the Thomson litigation found that the BidComp/Parity as used by Thomson and i-Deal and its users embodied each element of the asserted claims 1, 2, 9, 14, 18, 20, 24, 31, 32, 36, 40, 42, 46, and 56 of the '099 patent.

48. This Court entered judgment in accordance to the verdict rendered by the jury on October 9, 2006.

49. This Court later enhanced the jury award in the Thomson litigation to $76.9 million based on the Court's finding of willful infringement.

50. On July 14, 2008, the U.S. Court of Appeals for the Federal Circuit issued an opinion in the Thomson litigation affirming this Court's judgment of validity of claims 2, 18, 20, 24, 32, 40, 42, and 46 of the '099 patent.

51. In particular, the Federal Circuit opinion in the Thomson litigation affirmed this Court's judgment of non-obviousness of claims 2, 18, 20, 24, 32, 40, 42, and 46 of the '099 patent.

52. In the same July 14, 2008 opinion in the Thomson litigation, the Federal Circuit did not review or question the jury's findings that BidComp/Parity encompassed every element of 1, 2, 9, 14, 18, 20, 24, 31, 32, 36, 40, 42, 46, and 56 of the '099 patent.

53. Under the then-prevailing interpretation of the standard for finding "joint infringement," the Federal Circuit concluded that Thomson and i-Deal could not be held liable for the system's infringement because Thomson and i-Deal "neither performed every step of the claimed methods nor had another party perform steps on its behalf," relying on *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).

54. The Federal Circuit did not address whether Thomson or i-Deal could be found liable for indirect infringement under the standard announced in a later decision of the court, *Akamai Technologies., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc).

55. The Federal Circuit's later en banc opinion in *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301 (Fed. Cir. 2012) (en banc) overruled the Federal Circuit's opinion in *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007).

56. The Federal Circuit in *Akamai* held that defendants, such as Thomson and i-Deal, can be found liable for infringement even if they do not perform every step of a method claim or have someone else perform those steps on their behalf.

57. No later than September 2007, Ipreo was aware of Grant Street's claims of infringement against i-Deal's use of BidComp/Parity in the Thomson litigation.

58. In information available on Ipreo's website, Ipreo identifies "BiDCOMP/Parity" as one of its "Products & Services."

59. In information available on Ipreo's website, Ipreo states that "Virtually every competitive sale in the market has at least one bid that is structured in BiDCOMP which makes the competitive bidding process more accurate and efficient."

60. On information and belief, bidders participating in a BidComp/Parity auction can be in different physical locations and can simultaneously participate in the same auction over an electronic network.

61. For example, the recent "Official Notice of Sale" for $8,500,000 of "General Obligation Bonds, Series 2013, of School District No. 1 of Richland County, South Carolina," states that "[a]ll proposals shall be submitted electronically via BIDCOMP/PARITY pursuant to

this notice until 11:30 A.M. local time, but no proposal will be received after the time for receiving proposals specified above."

62. On information and belief, bidders participating in a BidComp/Parity auction can access networked devices, such as computers with internet access, and communicate over an electronic network, such as the internet, with a least one computer having BidComp/Parity software.

63. For example, information on Ipreo's website states that "[a]ll Ipreo applications are fully web-based," which includes BidComp/Parity.

64. On information and belief, BidComp/Parity enforces at least one condition bidders must satisfy to submit competing bids, such as registration with BidComp/Parity.

65. For example, the recent "Official Notice of Sale" for $8,500,000 of "General Obligation Bonds, Series 2013, of School District No. 1 of Richland County, South Carolina," states that "[p]rospective purchasers who intend to submit their proposal by BIDCOMP/PARITY must register and be contracted customers of Thomson Financial Municipals Group's BIDCOMP Competitive Bidding System prior to sale."

66. On information and belief, BidComp/Parity enforces at least one condition that competing bids must satisfy.

67. For example, the recent "Official Notice of Sale" for $8,500,000 of "General Obligation Bonds, Series 2013, of School District No. 1 of Richland County, South Carolina," states that "[f]inancial institutions submitting proposals to purchase ("Bidders") shall specify the rate of interest per annum which the Bonds are to bear" and those proposals "shall be submitted electronically via BIDCOMP/PARITY."

68. In addition, information available on Ipreo's website states that bids placed on BidComp/Parity "are automatically checked against bid parameters."

69. On information and belief, BidComp/Parity provides a centralized time indication.

70. Information available on Ipreo's website shows an example screenshot of BidComp/Parity with a "Clock," pictured below:



71. In addition, information available on Ipreo's website states that BidComp provides the "ability to date and time-stamp all bids."

72. In addition, the recent "Notice of Sale" for Westchester County of New York's "$5,030,000* GENERAL OBLIGATION SERIAL BONDS-2013 SERIES C (Tax Exempt)" with a bid date of Tuesday, November 26, 2013 states that "[t]he time maintained by Parity shall constitute the official time with respect to all bids submitted."

73. On information and belief, BidComp/Parity includes an electronic bid submission system that receives, over a network, bids from bidders using networked computers or devices.

74. For example, the recent "Official Notice of Sale" for $8,500,000 of "General Obligation Bonds, Series 2013, of School District No. 1 of Richland County, South Carolina," states that "[a]ll proposals shall be submitted electronically via BIDCOMP/PARITY."

75. In addition, information available on Ipreo's website states that "[t]he BiDCOMP/Parity® system provides an efficient and secure process for underwriters to submit bids and for issuers to receive bids."

76. On information and belief, BidComp/Parity enables bidders to modify their bid inputs.

77. For example, information available on Ipreo's website states that "[a]s a bid is created, BiDCOMP automatically checks against the bid parameters in the database and alerts the user to any violations."

78. In addition, information available on Ipreo's website states that BidComp/Parity allows users to "[r]efine bid information up to the last minute."

79. On information and belief, BidComp/Parity can allow comparison of received bids.

80. Information available on Ipreo's website describes a "pilot program" using "Parity" for Westchester County beginning in 2010 that "allows for open auctions in which bids are ranked as they come in."

81. On information and belief, BidComp/Parity provides information that allows for display of the best bid.

82. For example, information available on Ipreo's website states that BidComp/Parity has "[t]he ability to announce the 'apparent' winning bid via industry news services, if the winning bid was submitted via BiDCOMP."

83. In addition, the recent "Notice of Sale" for Westchester County of New York's "$5,030,000* GENERAL OBLIGATION SERIAL BONDS-2013 SERIES C (Tax Exempt)" with a bid date of Tuesday, November 26, 2013 states that "After receipt of bids is closed, the County through Parity or telephone will indicate the apparent successful bidder."

### COUNT 1 – INFRINGEMENT OF THE '063 PATENT

84. Grant Street refers to and incorporates herein each of the preceding paragraphs 1-83 as if fully set forth herein.

85. On information and belief, Ipreo has marketed and used, and continues to market and use, BidComp/Parity in conducting auctions of financial or legal instruments.

86. On information and belief, Ipreo has offered to sell and sold, and continues to offer for sale and sell, access to or use of BidComp/Parity for use in auctions of financial or legal instruments.

87. On information and belief, Ipreo's marketing, use, offers to sell, and sales of auctions using BidComp/Parity and/or access or use of BidComp/Parity for auctions of financial or legal instruments infringe one or more claims of the '063 patent.

88. As a competitor to Ipreo, Grant Street has suffered and will continue to suffer damages and other harm as a result of Ipreo's infringement.

### PRAYER FOR RELIEF

WHEREFORE, Grant Street requests that the Court enter judgment in its favor and against Ipreo as follows:

(a) A judgment that Ipreo has infringed the '063 patent through its marketing, use, offers to sell, and sales of auctions using BidComp/Parity;

(b) An order permanently enjoining Ipreo, and all persons acting in concert with Ipreo, from infringing the '063 patent through the marketing, use, offers to sell, and sales of BidComp/Parity, prior to the expiration of the '063 patent, inclusive of any extension(s) and additional period(s) of exclusivity;

(c) A declaration that this is an exceptional case and award attorneys' fees pursuant to 35 U.S.C. § 285;

(d) An order awarding Grant street costs and expenses in this action; and

(e) Such further and other relief as this Court may deem just and proper.

## JURY DEMAND

Grant Street hereby demands a jury trial for all issues so triable.

Dated: March 12, 2014             GRANT STREET GROUP, INC.

By:   s/Thomas M. Joseph

Thomas M. Joseph, Esq. (PA 87012)
Grant Street Group, Inc.
429 Forbes Avenue, Suite 1800
Pittsburgh, PA 15219

Telephone:   (412) 391-5555
Facsimile:   (412) 391-7608
tom.joseph@grantstreet.com

Philip S. Beck, Esq.
Sean W. Gallagher, Esq.
Katherine G. Minarik, Esq.
Adam K. Mortara, Esq.
BARTLIT BECK HERMAN PALENCHAR
 & SCOTT LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60654

Telephone: (312) 494-4400
Facsimile: (312) 494-4440
philip.beck@bartlit-beck.com
sean.gallagher@bartlit-beck.com
katherine.minarik@bartlit-beck.com
adam.mortara@bartlit-beck.com

*Attorneys for Plaintiff*